(Slip Opinion)          OCTOBER TERM, 2012          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ALREADY, LLC, DBA YUMS *v.* NIKE, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 11–982.   Argued November 7, 2012—Decided January 9, 2013

Nike filed this suit, alleging that two of Already's athletic shoes violated Nike's Air Force 1 trademark.  Already denied the allegations and filed a counterclaim challenging the validity of Nike's Air Force 1 trademark.  While the suit was pending, Nike issued a "Covenant Not to Sue," promising not to raise any trademark or unfair competition claims against Already or any affiliated entity based on Already's existing footwear designs, or any future Already designs that constituted a "colorable imitation" of Already's current products. Nike then moved to dismiss its claims with prejudice, and to dismiss Already's counterclaim without prejudice on the ground that the covenant had extinguished the case or controversy.  Already opposed dismissal of its counterclaim, contending that Nike had not established that its covenant had mooted the case.  In support, Already presented an affidavit from its president, stating that Already planned to introduce new versions of its lines into the market; affidavits from three potential investors, asserting that they would not consider investing in Already until Nike's trademark was invalidated; and an affidavit from an Already executive, stating that Nike had intimidated retailers into refusing to carry Already's shoes.  The District Court dismissed Already's counterclaim, concluding that there was no longer a justiciable controversy.  The Second Circuit affirmed. It explained that the covenant was broadly drafted; that the court could not conceive of a shoe that would infringe Nike's trademark yet not fall within the covenant; and that Already had not asserted any intent to market such a shoe.

*Held*: This case is moot.  Pp. 3–15.

　(a) A case becomes moot—and therefore no longer a "Case" or "Controversy" for Article III purposes—"when the issues presented are no

longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy* v. *Hunt*, 455 U. S. 478, 481. A defendant cannot, however, automatically moot a case simply by ending its unlawful conduct once sued. *City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U. S. 283, 289. Instead, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 190. Pp. 3–4.

(b) Nike has the burden to show that it "could not reasonably be expected" to resume its enforcement efforts against Already. The voluntary cessation doctrine was not disavowed in *Deakins* v. *Monaghan*, 484 U. S. 193. There, the Court employed precisely the analysis the test requires, finding a case moot because the challenged action—pursuing a claim in court—could not be resumed in "this or any subsequent action" and because it was entirely "'speculative'" that any similar claim would arise in the future. *Id.,* at 201, n. 4. Pp. 5–6.

(c) Application of the voluntary cessation doctrine shows that this case is moot. Pp. 6–14.

(1) The breadth of the covenant suffices to meet the burden imposed by the doctrine. The covenant is unconditional and irrevocable. It prohibits Nike from filing suit or making any claim or demand; protects both Already and Already's distributors and customers; and covers not just current or previous designs, but also colorable imitations. Once Nike demonstrated that the covenant encompasses all of Already's allegedly unlawful conduct, it became incumbent on Already to indicate that it engages in or has sufficiently concrete plans to engage in activities that would arguably infringe Nike's trademark yet not be covered by the covenant. But Already failed to do so in the courts below or in this Court. The case is thus moot because the challenged conduct cannot reasonably be expected to recur. *Cardinal Chemical Co.* v. *Morton Int'l, Inc.*, 508 U. S. 83, and *Altvater* v. *Freeman*, 319 U. S. 359, distinguished. Pp. 6–9.

(2) Already's alternative theories of Article III injuries do not save the case from mootness, because none of those injuries suffices to support Article III standing in the first place. Already argues that as long as Nike is free to assert its trademark, investors will hesitate to invest in Already. But once it is "absolutely clear" that challenged conduct cannot "reasonably be expected to recur," *Friends of the Earth, supra,* at 190, the fact that some individuals may base decisions on conjectural or hypothetical speculation does not give rise to the sort of concrete and actual injury necessary to establish Article III standing, *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560. Already worries about its retailers, but even if a plaintiff may bring an

invalidity claim based on a reasonable expectation that a trademark holder will take action against the plaintiff's retailers, the covenant here extends protection to Already's distributors and customers. Already also complains that Nike's decision to sue in the first place has led Already to fear another suit. But, since Nike has met its burden to demonstrate that there is no reasonable risk of such a suit, this concern is unfounded. Already falls back on the sweeping argument that, as one of Nike's competitors, it inherently has standing because no covenant can eradicate the effects of a registered but invalid trademark. The logical conclusion of this theory seems to be that a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful—*e.g.,* a trademark or the awarding of a contract—but this Court has never accepted such a boundless theory of standing.

Already's policy objection that dismissing this case allows Nike to bully small innovators does not support adoption of this broad theory. Granting covenants not to sue may be a risky long-term strategy for a trademark holder. And while accepting Already's theory may benefit the small competitor in this case, it also lowers the gates for larger companies with more resources, who may challenge the intellectual property portfolios of more humble rivals simply because they are competitors in the same market. This would further encourage parties to employ litigation as a weapon against their competitors rather than as a last resort for settling disputes. Pp. 9–14.

(d) No purpose would be served by remanding the case. Already has had every opportunity and incentive to submit evidence in the proceedings below. It has refused, at every stage of the proceedings, to suggest that it has any plans to design a shoe that violates the Air Force 1 trademark yet falls outside the covenant. And while the courts below did not expressly invoke the voluntary cessation standard, their analysis addressed the same questions this Court addresses here under that standard. Pp. 14–15.

663 F. 3d 89, affirmed.

ROBERTS, C. J., delivered the opinion for a unanimous Court. KENNEDY, J., filed a concurring opinion, in which THOMAS, ALITO, and SOTOMAYOR, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–982

ALREADY, LLC, DBA YUMS, PETITIONER *v.* NIKE, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[January 9, 2013]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

The question is whether a covenant not to enforce a trademark against a competitor's existing products and any future "colorable imitations" moots the competitor's action to have the trademark declared invalid.

I

Respondent Nike designs, manufactures, and sells athletic footwear, including a line of shoes known as Air Force 1s. Petitioner Already also designs and markets athletic footwear, including shoe lines known as "Sugars" and "Soulja Boys." Nike, alleging that the Soulja Boys infringed and diluted the Air Force 1 trademark, demanded that Already cease and desist its sale of those shoes. When Already refused, Nike filed suit in federal court alleging that the Soulja Boys as well as the Sugars infringed and diluted its Air Force 1 trademark. Already denied these allegations and filed a counterclaim contending that the Air Force 1 trademark is invalid.

In March 2010, eight months after Nike filed its complaint, and four months after Already counterclaimed,

Nike issued a "Covenant Not to Sue." Its preamble stated that "Already's actions . . . no longer infringe or dilute the NIKE Mark at a level sufficient to warrant the substantial time and expense of continued litigation." App. 96a. The covenant promised that Nike would not raise against Already or any affiliated entity any trademark or unfair competition claim based on any of Already's existing footwear designs, or any future Already designs that constituted a "colorable imitation" of Already's current products. *Id.,* at 96a–97a.

After issuing this covenant, Nike moved to dismiss its claims with prejudice, and to dismiss Already's invalidity counterclaim without prejudice on the ground that the covenant had extinguished the case or controversy. Already opposed dismissal of its counterclaim, arguing that Nike had not established that its voluntary cessation had mooted the case. In support, Already presented an affidavit from its president, stating that Already had plans to introduce new versions of its shoe lines into the market; affidavits from three potential investors, asserting that they would not consider investing in Already until Nike's trademark was invalidated; and an affidavit from one of Already's executives, stating that Nike had intimidated retailers into refusing to carry Already's shoes.

The District Court dismissed Already's counterclaim, stating that because Already sought "to invoke the Court's declaratory judgment jurisdiction, it bears the burden of demonstrating that the Court has subject matter jurisdiction over its counterclaim[ ]." Civ. No. 09–6366 (SDNY, Jan. 20, 2011), App. to Pet. for Cert. 25a. The Court read the covenant "broad[ly]," concluding that "any of [Already's] future products that arguably infringed the Nike Mark would be 'colorable imitations' " of Already's current footwear and therefore protected by the covenant. *Id.,* at 29a, n. 2. Finding no evidence that Already sought to develop any shoes not covered by the covenant, the Court

held there was no longer "a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*, at 34a (quoting *Med-Immune, Inc.* v. *Genentech, Inc.*, 549 U. S. 118, 127 (2007) (internal quotation marks omitted)).

The Second Circuit affirmed. It held that in determining whether a covenant not to sue "eliminates a justiciable case or controversy," courts should look to the totality of the circumstances, including "(1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention . . . on the part of the party asserting jurisdiction" to engage in conduct not covered by the covenant. 663 F. 3d 89, 96 (2011) (footnote omitted). Noting that the covenant covers "both past sales and future sales of both existing products and colorable imitations," the Second Circuit found it hard to conceive of a shoe that would infringe the Air Force 1 trademark yet not fall within the covenant. *Id.,* at 97. Given that Already "ha[d] not asserted any intention to market any such shoe," the court concluded that Already could not show any continuing injury, and that therefore no justiciable controversy remained. *Ibid.* We granted certiorari. 567 U. S. ___ (2012).

## II

Article III of the Constitution grants the Judicial Branch authority to adjudicate "Cases" and "Controversies." In our system of government, courts have "no business" deciding legal disputes or expounding on law in the absence of such a case or controversy. *DaimlerChrysler Corp.* v. *Cuno*, 547 U. S. 332, 341 (2006). That limitation requires those who invoke the power of a federal court to demonstrate standing—a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen* v. *Wright*, 468 U. S. 737, 751 (1984). We have repeatedly held that an

"actual controversy" must exist not only "at the time the complaint is filed," but through "all stages" of the litigation. *Alvarez* v. *Smith*, 558 U. S. 87, 92 (2009) (internal quotation marks omitted); *Arizonans for Official English* v. *Arizona*, 520 U. S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed'" (quoting *Preiser* v. *Newkirk*, 422 U. S. 395, 401 (1975))).

A case becomes moot—and therefore no longer a "Case" or "Controversy" for purposes of Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy* v. *Hunt*, 455 U. S. 478, 481 (1982) (*per curiam*) (some internal quotation marks omitted). No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute "is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez, supra,* at 93.

We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. *City of Mesquite* v. *Aladdin's Castle, Inc.*, 455 U. S. 283, 289 (1982). Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 190 (2000).

### III

At the outset of this litigation, both parties had standing to pursue their competing claims in court. Nike had standing to sue because Already's activity was allegedly infringing its rights under trademark law. Already had standing to file its counterclaim because Nike was allegedly pressing an invalid trademark to halt Already's legitimate business activity. See *MedImmune, supra,* at 126–137 (a genuine threat of enforcement of intellectual property rights that inhibits commercial activity may support standing). But then Nike dismissed its claims with prejudice and issued its covenant, calling into question the existence of any continuing case or controversy.

Under our precedents, it was Nike's burden to show that it "could not reasonably be expected" to resume its enforcement efforts against Already. *Friends of the Earth, supra,* at 190. Nike makes a halfhearted effort to avoid this test. Relying on *Deakins* v. *Monaghan,* 484 U. S. 193 (1988), it argues that "when a defendant makes a judicially enforceable commitment to avoid the conduct that forms the basis for an Article III controversy, there is no reason to apply a special rule premised on the defendant's unfettered ability to 'return to [its] old ways.'" Brief for Respondent 42.

Nike's reliance on *Deakins* is misplaced. In *Deakins,* the Court did not disavow the voluntary cessation doctrine; the Court employed precisely the analysis required by that test. It found the case was moot because the challenged action—pursuing a claim in court—could not be resumed in "this or any subsequent action" and because it was entirely "speculative" that any similar claim would arise in the future. 484 U. S*.,* at 201, n. 4 (internal quotation marks omitted). It distinguished that situation from one in which a defendant is "free to return to his old ways." *Ibid.* (internal quotation marks omitted). That is the question the voluntary cessation doctrine poses: Could the

allegedly wrongful behavior reasonably be expected to re-
cur?  Nike cannot avoid its "formidable burden" by as-
suming the answer to that question.  *Friends of the Earth*,
*supra*, at 190.

### IV
### A

Having determined that the voluntary cessation doc-
trine applies, we begin our analysis with the terms of the
covenant:

> "[Nike] unconditionally and irrevocably covenants to
> refrain from making *any* claim(s) or demand(s) . . .
> against Already or *any* of its . . . related business enti-
> ties . . . [including] distributors . . . and employees of
> such entities and *all* customers . . . on account of any
> *possible* cause of action based on or involving trade-
> mark infringement, unfair competition, or dilution,
> under state or federal law . . . relating to the NIKE
> Mark based on the appearance of *any* of Already's cur-
> rent and/or previous footwear product designs, and *any*
> colorable imitations thereof, regardless of whether
> that footwear is produced . . . or otherwise used in
> commerce before or after the Effective Date of this
> Covenant." App. 96a–97a (emphasis added).

The breadth of this covenant suffices to meet the burden
imposed by the voluntary cessation test.  The covenant is
unconditional and irrevocable.  Beyond simply prohibiting
Nike from filing suit, it prohibits Nike from making any
claim *or* any demand.  It reaches beyond Already to pro-
tect Already's distributors and customers.  And it covers
not just current or previous designs, but any colorable
imitations.

In addition, Nike originally argued that the Sugars and
Soulja Boys infringed its trademark; in other words, Nike
believed those shoes were "colorable imitations" of the Air

Force 1s. See Trademark Act of 1946 (Lanham Act), §32, 60 Stat. 437, as amended, 15 U. S. C. §1114. Nike's covenant now allows Already to produce all of its existing footwear designs—including the Sugar and Soulja Boy—and any "colorable imitation" of those designs. We agree with the Court of Appeals that "it is hard to imagine a scenario that would potentially infringe [Nike's trademark] and yet not fall under the Covenant."* 663 F. 3d, at 97. Nike, having taken the position in court that there is no prospect of such a shoe, would be hard pressed to assert the contrary down the road. See *New Hampshire* v. *Maine*, 532 U. S. 742, 749 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him'" (quoting *Davis* v. *Wakelee*, 156 U. S. 680, 689 (1895))). If such a shoe exists, the parties have not pointed to it, there is no evidence that Already has dreamt of it, and we cannot conceive of it. It sits, as far as we can tell, on a shelf between Dorothy's ruby slippers and Perseus's winged sandals.

Given Nike's demonstration that the covenant encompasses all of its allegedly unlawful conduct, it was incum-

————————

*Nike has "acknowledged that if [Already] were to manufacture an exact copy of the Air Force 1 shoe . . . Nike could claim that the Covenant permits an infringement suit on the ground that a counterfeit differs from a colorable imitation under the Lanham Act." 663 F. 3d, at 97, n. 5. Already, however, has never asserted any intent to make counterfeit Air Force 1s. *Ibid.* Moreover, because a counterfeit would presumably include Nike's swoosh, an independently registered trademark not at issue here, invalidating the Air Force 1 trademark may not be sufficient to allow Already to proceed to make counterfeits. See 15 U. S. C. §1127 (defining a counterfeit as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark").

bent on Already to indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant. After all, information about Already's business activities and plans is uniquely within its possession. The case is moot if the court, considering the covenant's language and the plaintiff's anticipated future activities, is satisfied that it is "absolutely clear" that the allegedly unlawful activity cannot reasonably be expected to recur.

But when given the opportunity before the District Court, Already did not assert any intent to design or market a shoe that would expose it to any prospect of infringement liability. See App. to Pet. for Cert. 31a (finding that there was "no indication" of any such intent); 663 F. 3d, at 97, n. 5 (noting the "absence of record evidence that [Already] intends to make any arguably infringing shoe that is not unambiguously covered by the Covenant"). The only affidavit it submitted to the District Court on that question was from its president, saying little more than that Already currently has plans to introduce new shoe lines and make modifications to existing shoe lines. It never stated that these shoes would arguably infringe Nike's trademark yet fall outside the scope of the covenant. Nor did it do so on appeal to the Second Circuit. And again, it failed to do so here, even when counsel for Already was asked at oral argument whether his client had any intention to design or market a shoe that would even arguably fall outside the covenant. Tr. of Oral Arg. 6–8. Given the covenant's broad language, and given that Already has asserted no concrete plans to engage in conduct not covered by the covenant, we can conclude the case is moot because the challenged conduct cannot reasonably be expected to recur.

The authorities on which Already relies are not on point. In *Cardinal Chemical Co.* v. *Morton Int'l, Inc.*, we affirmed the unremarkable proposition that a court's "decision to

rely on one of two possible alternative grounds (noninfringement rather than invalidity) did not strip it of *power* to decide the second question, particularly when its decree was subject to review by this Court." 508 U. S. 83, 98 (1993). In essence, when a court has jurisdiction to review a case, and decides the issue on two independent grounds, the first half of its opinion does not moot the second half, or vice versa. Here the issue is whether the District Court had jurisdiction to consider the claim in the first place.

This case is also unlike *Altvater* v. *Freeman*, 319 U. S. 359 (1943). There, patent holders brought suit against licensees for specific performance of a license. The licensees counterclaimed, seeking a declaratory judgment that the patents were invalid. The Court of Appeals, after finding that the license was no longer in force and the devices at issue did not infringe, dismissed the licensees' counterclaim as moot. We reversed, finding the controversy still live because the licensees continued to "manufactur[e] and sell[ ] additional articles claimed to fall under the patents," and the patent holders continued to "demand[ ] . . . royalties" for those products. *Id.*, at 364–365. Here of course the whole point is that Already is free to sell its shoes without any fear of a trademark claim.

### B

Already argues, however, that there are alternative theories of Article III injuries that save the case from mootness. First, it argues that so long as Nike remains free to assert its trademark, investors will be apprehensive about investing in Already. Second, it argues that given Nike's decision to sue in the first place, Nike's trademarks will now hang over Already's operations like a Damoclean sword. Finally, and relatedly, Already argues that, as one of Nike's competitors, it inherently has standing to challenge Nike's intellectual property.

The problem for Already is that none of these injuries

suffices to support Article III standing. Although the voluntary cessation standard requires the defendant to show that the challenged behavior cannot reasonably be expected to recur, we have never held that the doctrine— by imposing this burden on the defendant—allows the plaintiff to rely on theories of Article III injury that would fail to establish standing in the first place.

We begin with Already's argument that Nike's trademark registration "gives false color to state and federal trademark claims which expose [Already's] business to substantial and unpredictable risks," deterring investors. Brief for Petitioner 31. To demonstrate this, Already presented affidavits from potential investors stating that Nike's lawsuit dissuaded them from investing in Already or prompted them to withdraw prior investments, and that they would "consider" investing in Already only if Nike's trademark were struck down. App. to Pet. for Cert. 33a. Already argues that like the plaintiffs in *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365 (1926)— who had standing to challenge an ordinance because it reduced their property value—Already should have standing to challenge the trademark because its mere existence hampers its ability to attract capital.

But once it is "absolutely clear" that challenged conduct cannot "reasonably be expected to recur," *Friends of the Earth*, 528 U. S., at 190, the fact that some individuals may base decisions on "conjectural or hypothetical" speculation does not give rise to the sort of "concrete" and "actual" injury necessary to establish Article III standing, *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560 (1992) (internal quotation marks omitted). In *Euclid*, we reasoned that, assuming the merits of plaintiff's claim, "the ordinance, in effect, constitutes a present invasion of [plaintiff's] property rights." 272 U. S., at 386. Here there is no such present invasion; in fact there is a covenant promising no invasion. In addition, unlike the plain-

tiffs in *Euclid*, Already does not claim that Nike's Air Force 1 infringes any of its property rights.

Already has also pointed to an affidavit from a vice president stating that Nike has "suggested" to Already's retailers that they refrain from carrying Already's shoes, lest "Nike . . . cancel its account or take other actions against the retailer, e.g., delay shipment of the retailer's Nike order or 'lose' the retailer's Nike order." App. 177a. Even if a plaintiff may bring an invalidity claim based on a reasonable expectation that a trademark holder will take action against the plaintiff's retailers, the covenant here extends protection to Already's distributors and customers. And even if Nike were engaging in harassment or unfair trade practices, Already has not explained how invalidating Nike's trademark would do anything to stop it.

Already also complains that it can no longer "just blithely go about its shoe business as if there were no risk of being sued again." Reply Brief 14. As counsel told us at oral argument: "once bitten, twice shy." Tr. of Oral Arg. 8. But we have never held that a plaintiff has standing to pursue declaratory relief merely on the basis of being "once bitten." Quite the opposite. See, *e.g.*, *Los Angeles* v. *Lyons*, 461 U. S. 95, 109 (1983) (holding there is no justiciable controversy where plaintiff had once been subjected to a chokehold). Given our conclusion that Nike has met its burden of demonstrating there is no reasonable risk that Already will be sued again, there is no reason for Already to be so shy. It is the only one of Nike's competitors with a judicially enforceable covenant protecting it from litigation relating to the Air Force 1 trademark. Insofar as the injury is a threat of Air Force 1 trademark litigation, Already is Nike's least injured competitor.

Already falls back on a sweeping argument: In the context of registered trademarks, "[n]o covenant, no matter how broad, can eradicate the effects" of a registered

but invalid trademark. Brief for Petitioner 33–34. According to Already, allowing Nike to unilaterally moot the case "subverts" the important role federal courts play in the administration of federal patent and trademark law. *Id.,* at 40. It allows companies like Nike to register and brandish invalid trademarks to intimidate smaller competitors, avoiding judicial review by issuing covenants in the rare case where the little guy fights back. Already and its *amici* thus contend that Already, "[a]s a company engaged in the business of designing and marketing athletic shoes," has standing to challenge Nike's trademark. See *id.,* at 21; see also Brief for Intellectual Property Professors as *Amici Curiae* 3 (suggesting that standing extends to all "participants in that field"); Brief for Public Patent Foundation as *Amici Curiae* 12 ("[T]he public has standing to challenge the validity of any issued patent or registered trademark in court").

Under this approach, Nike need not even have threatened to sue first. Already, even with no plans to make anything resembling the Air Force 1, could sue to invalidate the trademark simply because Already and Nike both compete in the athletic footwear market. Taken to its logical conclusion, the theory seems to be that a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful— whether a trademark, the awarding of a contract, a landlord-tenant arrangement, or so on. We have never accepted such a boundless theory of standing. The cases Already cites for this remarkable proposition stand for no such thing. In each of those cases, standing was based on an injury more particularized and more concrete than the mere assertion that something unlawful benefited the plaintiff's competitor. *Northeastern Fla. Chapter, Associated Gen. Contractors of America* v. *Jacksonville,* 508 U. S. 656 (1993); *Super Tire Engineering Co.* v. *McCorkle,* 416 U. S. 115 (1974).

Already's arguments boil down to a basic policy objection that dismissing this case allows Nike to bully small innovators lawfully operating in the public domain. This concern cannot compel us to adopt Already's broad theory of standing.

First of all, granting covenants not to sue may be a risky long-term strategy for a trademark holder. See, *e.g.,* 3 J. McCarthy, Trademarks & Unfair Competition §18:48, p. 18–112 (4th ed. 2012) ("[U]ncontrolled and 'naked' licensing can result in such a loss of significance of a trademark that a federal registration should be cancelled"); *Sun Banks of Fla., Inc.* v. *Sun Fed. Sav. & Loan Assn.*, 651 F. 2d 311, 316 (CA5 1981) (finding that "extensive third-party use of the [mark was] impressive evidence that there would be *no* likelihood of confusion"). In addition, the Lanham Act provides some check on abusive litigation practices by providing for an award of attorney's fees in "exceptional cases." 15 U. S. C. §1117(a); cf., *e.g.*, *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.*, 484 U. S. 49, 67, n. 6 (1987) (explaining that an award of litigation costs can protect "from the suddenly repentant defendant").

Accepting Already's theory may benefit the small competitor in this case. But lowering the gates for one party lowers the gates for all. As a result, larger companies with more resources will have standing to challenge the intellectual property portfolios of their more humble rivals— not because they are threatened by any particular patent or trademark, but simply because they are competitors in the same market. This would further encourage parties to employ litigation as a weapon against their competitors rather than as a last resort for settling disputes.

Already's only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone and, given the breadth of the covenant, cannot reasonably be expected to recur. There being no other basis on which

to find a live controversy, the case is clearly moot.

V

The Solicitor General asks us to "remand the case for further proceedings in which the parties can develop the record on both the scope of the covenant and petitioner's business activities, and the courts below can apply the proper standard to the record." Brief for United States as *Amicus Curiae* 28.

Such a remand would serve no purpose. The scope of the covenant is clear. Already's argument is not that the covenant could be drafted more broadly, but instead that no covenant would ever do. See Tr. of Oral Arg. 12–13.

As for business activities, it is plain that Already has said all it has to say. The District Court held a hearing on whether the case was mooted by the covenant. There, and at every stage of the proceedings thereafter, Already steadfastly refused to suggest that it has any plans to create any arguably infringing shoe that does not unambiguously fall within the scope of the covenant—this despite every incentive, opportunity, and invitation to do so. As noted, the District Court expressly found "no indication" that Already had any such plans, App. to Pet. for Cert. 31a, and Already never challenged this finding. It did not challenge that finding on appeal to the Second Circuit, even though its significance was clear. The Court of Appeals expressly found that Already "has not asserted any intention to market any such shoe." 663 F. 3d, at 97. Already declined to challenge these conclusions before us, despite questions from the bench addressing that particular issue. Tr. of Oral Arg. 7–8.

The courts below did not expressly invoke the voluntary cessation standard, as articulated in our cases. But the analysis in their opinions addressed the same questions we have addressed today under that standard. In determining the case was moot, they relied, as we have, on the

breadth of the covenant and the absence of any indication that Already would produce an infringing shoe. The District Court explained that "[w]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." App. to Pet. for Cert. 29a (internal quotation marks omitted). It read the covenant "broadly," *id.*, at 34a, and found "no indication that any of [Already's] forthcoming models would extend beyond this broad language," *id.*, at 31a. It even concluded that from Already's perspective, there was "little difference" between invalidating the trademark and the scope of protection already afforded by the covenant. *Id.*, at 34a.

Likewise, the Court of Appeals asked "whether the covenant covers future, as well as past, activity and products," and inquired into "evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that arguably are not covered by the covenant." 663 F. 3d, at 96. It concluded that "[t]he breadth of the Covenant renders the threat of litigation remote or nonexistent" because it could not envision a shoe that would be within Nike's trademark yet not protected by the covenant, noting that Already "has not asserted any intention to market any such shoe." *Id.*, at 97.

Under such circumstances, a remand would serve no purpose. Cf., *e.g., Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 13–16) (announcing new standard and directly applying standard to affirm the jury verdict); *Thornburg* v. *Gingles*, 478 U. S. 30 (1986) (announcing and applying new standard). The uncontested findings made by the District Court, and confirmed by the Second Circuit, make it "absolutely clear" this case is moot.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–982

_____

## ALREADY, LLC, DBA YUMS, PETITIONER *v*. NIKE, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[January 9, 2013]

JUSTICE KENNEDY, with whom JUSTICE THOMAS, JUSTICE ALITO, and JUSTICE SOTOMAYOR join, concurring.

As the Court now holds and as the precedents instruct, when respondent Nike invoked the covenant not to sue to show the case is moot, it had the burden to establish that proposition. The burden was not on Already to show that a justiciable controversy remains. Under the voluntary cessation doctrine, Nike bears the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 190 (2000). In the circumstances here, then, Nike must demonstrate that the covenant not to sue is of sufficient breadth and force that Already can have no reasonable anticipation of a future trademark infringement claim from Nike.

Both the District Court and the Court of Appeals issued their rulings on the erroneous premise that it was for Already to make the relevant showing. When a court has imposed the burden to establish a certain proposition on the wrong party, remand from a reviewing court is often appropriate to determine whether the outcome would have been different had the proper rule been applied. Here, however, the Court concludes the case must be deemed moot in all events, based on the terms and scope of the

covenant and on Already's seeming insistence that no matter how it might be worded, a covenant drawn by the trademark holder cannot moot the case. Brief for Petitioner 33–34; Tr. of Oral Arg. 10–13. For reasons the Court states, this goes too far. Already appears also to disclaim any need to determine whether there is a real likelihood it will produce a new product that, first, is not a colorable imitation of its existing product line, and, second, might be thought to infringe Nike's trademark.

This brief, separate concurrence is written to underscore that covenants like the one Nike filed here ought not to be taken as an automatic means for the party who first charged a competitor with trademark infringement suddenly to abandon the suit without incurring the risk of an ensuing adverse adjudication. Courts should be well aware that charges of trademark infringement can be disruptive to the good business relations between the manufacturer alleged to have been an infringer and its distributors, retailers, and investors. The mere pendency of litigation can mean that other actors in the marketplace may be reluctant to have future dealings with the alleged infringer. Nike appears to have been well aware of that dynamic in this case. In referring to Already it stated at one point: "[O]ver the past eight months, Nike has cleared out the worst offending infringers. Now Already remains as one of the last few companies that was identified on that top ten list of infringers." App. 114a.

Any demonstrated reluctance by investors, distributors, and retailers to maintain good relations with the alleged infringer might, in an appropriate case, be an indication that the market itself anticipates that a new line of products could be outside the covenant not to sue yet still within a zone of alleged infringement. And, as noted at the outset, it is the trademark holder who has the burden to show that this is not the case. It is not the burden of the alleged infringer to prove that the covenant not to sue

is inadequate to protect its current and future products from a trademark enforcement action.

In later cases careful consideration must be given to the consequences of using a covenant not to sue as the basis for a motion to dismiss as moot. If the holder of an alleged trademark can commence suit against a competitor; in midcourse file a covenant not to sue; and then require the competitor and its business network to engage in costly, satellite proceedings to demonstrate that future production or sales might still be compromised, it would seem that the trademark holder's burden to show the case is moot may fall well short of being formidable. The very suit the trademark holder initiated and later seeks to declare moot may still cause disruption and costs to the competition. The formidable burden to show the case is moot ought to require the trademark holder, at the outset, to make a substantial showing that the business of the competitor and its supply network will not be disrupted or weakened by satellite litigation over mootness or by any threat latent in the terms of the covenant itself. It would be most unfair to allow the party who commences the suit to use its delivery of a covenant not to sue as an opportunity to force a competitor to expose its future business plans or to otherwise disadvantage the competitor and its business network, all in aid of deeming moot a suit the trademark holder itself chose to initiate.

There are relatively few cases that have discussed the meaning and effect of covenants not to sue in the context of ongoing litigation. See, *e.g.*, *Revolution Eyewear, Inc.* v. *Aspex Eyewear, Inc.*, 556 F. 3d 1294 (CA Fed. 2009); *Caraco Pharmaceutical Labs., Ltd.* v. *Forest Labs., Inc.*, 527 F. 3d 1278 (CA Fed. 2008). Courts should proceed with caution before ruling that they can be used to terminate litigation. An insistence on the proper allocation of the formidable burden on the party asserting mootness is one way to ensure that covenants are not automatic mech-

anisms for trademark holders to use courts to intimi-date competitors without, at the same time, assuming the risk that their trademark will be found invalid and unenforceable.

While there still may be some doubts that Nike's show-ing below would suffice in other circumstances, here Al-ready's litigation stance does seem to have made further proceedings on the mootness issue unnecessary. In addi-tion, as the Court notes, in any future trademark proceed-ing Nike will be bound by the lower courts' broad reading of this particular covenant, thus barring suit against Already for any shoe that is not an exact copy or counter-feit version of the Air Force 1 shoe. See *ante,* at 7, and n. (citing *New Hampshire* v. *Maine,* 532 U. S. 742, 749 (2001)).

With these observations, I join the opinion and judg-ment of the Court.