# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1297

_____

Salahaddin Mokri Ayyoubi,

*Plaintiff - Appellant,*

v.

Eric H. Holder, Jr., in his official capacity as the Attorney General of the United
States; Janet Napolitano, in her official capacity as Secretary of the United States
Department of Homeland Security; Alejandro Mayorkas, in his official capacity as
Director, U.S. Citizenship and Immigration Services; Marilyn Wiles, in her official
capacity as Director of the Nebraska Service Center, U.S. Citizenship and
Immigration Services; Donald Neufeld, in his official capacity as Chief of Service
Center Operations, U.S. Citizenship and Immigration Services,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 19, 2012
Filed: April 2, 2013

_____

Before RILEY, Chief Judge, SMITH and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Salahaddin Ayyoubi, a refugee immigrant, applied to become a lawful permanent resident of the United States. On February 26, 2008, the United States Citizenship and Immigration Services ("USCIS") denied Ayyoubi's application. USCIS found Ayyoubi to be statutorily ineligible for lawful permanent resident status based on the agency's determination that he had supported and received training from the Kurdish Democratic Party of Iran ("KDPI"), a "Tier III" or "undesignated" terrorist organization. *See* 8 U.S.C. § 1182(a)(3)(B).

In April 2008, USCIS reopened Ayyoubi's case, vacated its prior decision, and placed the matter on "hold-in-abeyance status." *Ayyoubi v. Holder*, No. 4:10-CV-1881 SNLJ, 2011 WL 2983462, at *1 (E.D. Mo. July 22, 2011). On October 6, 2010, Ayyoubi sued the Attorney General, the Secretary of the Department of Homeland Security, and various USCIS officials. Ayyoubi sought a judgment declaring that the agency acted unlawfully by withholding adjudication on his application without periodically reviewing it, an injunction ordering USCIS to adjudicate his application within 30 days, and other relief. *Id.*

All parties moved for summary judgment. The district court granted the defendants' motion in part, holding that the delay in adjudicating Ayyoubi's application was neither unlawful nor unreasonable as a matter of law. *Id.* at *10. Ayyoubi appealed. On October 1, 2012, after intervening action by the Secretary, USCIS approved Ayyoubi's application for adjustment to permanent resident status. Because the case is now moot, we dismiss the appeal, vacate the judgment of the district court, and remand the case with instructions to dismiss the complaint.

I.

Aliens who have supported or received training from groups deemed to be terrorist organizations generally are barred from admission to the United States and are ineligible for lawful permanent resident status. 8 U.S.C. § 1182(a)(3)(B); 8

-2-

U.S.C. § 1159(c). On December 26, 2007, Congress authorized the Secretary of Homeland Security, in consultation with the Secretary of State and the Attorney General, to exempt qualifying terrorist groups or individual aliens from the statutory bar. Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, § 691(a), 121 Stat. 1844, 2364 (2007); 8 U.S.C. 1182(d)(3)(B)(i). On March 26, 2008, the Deputy Director of USCIS issued a policy memorandum instructing its adjudicators to reopen and place on hold any case in which relief was denied, if the alien might benefit from future exemptions issued by the Secretary of Homeland Security under the newly expanded authority. Memorandum from Jonathan Scharfen, Deputy Dir., U.S. Citizenship and Immigration Servs., *Withholding Adjudication and Review of Prior Denials of Certain Categories of Cases Involving Association with, or Provision of Material Support to, Certain Terrorist Organizations or Other Groups* (Mar. 26, 2008); *see also* 8 C.F.R. § 103.5(a)(5). Pursuant to this guidance, USCIS reopened Ayyoubi's application and placed it on hold.

On October 6, 2010, Ayyoubi sued. He argued, *inter alia*, that USCIS acted illegally by withholding adjudication on his application without periodically reviewing it. Pointing to 8 C.F.R. § 103.2(b)(18), Ayyoubi asserted that if USCIS does not adjudicate an application for immigration benefits within two years of filing, then it must thereafter obtain permission from higher agency officials to continue to withhold adjudication once every six months until the application is approved or denied. *See* 8 C.F.R. § 103.2(b)(18). The government responded that the regulation is inapplicable to cases held in abeyance pending further agency guidance. As a result, the government stated, it was not required to review Ayyoubi's application periodically and did not do so. The district court agreed with the government, concluding that the "plain language of the regulation . . . demonstrates that it does not apply." It therefore granted the government's motion for summary judgment. *Ayyoubi*, 2011 WL 2983462, at *10. Ayyoubi appealed.

In August 2012, while this appeal was pending, the Secretary of Homeland Security issued a Notice of Determination delegating to USCIS the authority to grant immigration benefits to aliens associated with "Tier III" terrorist organizations. *See Notice of Determination: Exercise of Authority Under the Immigration and Nationality Act*, 77 Fed. Reg. 49,821 (Aug. 17, 2012); *see also* 8 U.S.C. § 1182(a)(3)(B). On September 26, 2012, USCIS issued a policy memorandum supplementing its prior guidance. PM-602-0073, *Implementation of New "Limited General" Discretionary Exemption Under Immigration and Nationality Act (INA) Section 212(d)(3)(B)(i) for Qualified Applicants with Specified Associations and Activities with Qualified Undesignated, or "Tier III," Terrorist Organizations* (Sept. 26, 2012). The memorandum provides for a "Limited General" exemption that enables a qualifying applicant to receive immigration benefits notwithstanding his or her prior involvement with a "Tier III" terrorist organization. *Id.* at 3-7. To qualify, an applicant must meet prescribed individual eligibility criteria and also demonstrate that he or she merits the agency's grace in the totality of the circumstances. *Id.* If the alien fails to meet one or more of the exemption criteria, then his or her application must be placed on hold or denied. *Id.* at 6-7.

On October 1, 2012, USCIS granted Ayyoubi a "Limited General" exemption and approved his application for adjustment to lawful permanent resident status. The government contends that Ayyoubi's case is now moot. Ayyoubi responds that he is still entitled to a declaratory judgment that the agency's actions are unlawful, because he is uncertain why the agency granted him an adjustment of status. Ayyoubi hypothesizes "two mutually exclusive explanations" for his approval: either (1) USCIS found him to be ineligible for lawful permanent resident status on terrorism-related grounds, pursuant to 8 U.S.C. §§ 1159(c) and 1182(a)(3), but granted him a discretionary exemption from the statutory bar, or (2) USCIS determined that Ayyoubi should never have been subject to the statutory bar in the first instance. He asserts that if this court does not declare that USCIS acted illegally by failing periodically to review his application while withholding adjudication on it, then the

agency may exploit this asserted ambiguity and (1) reopen his approved application and put him "back in limbo," (2) illegally withhold adjudication on Ayyoubi's as-yet unfiled application for naturalization, or (3) illegally withhold adjudication on petitions for entry into the United States that Ayyoubi asserts he will file on behalf of his parents and siblings, in the event that his unfiled naturalization application is approved.

For the reasons that follow, we conclude that Ayyoubi's uncertainty about the reasons for his approval and his subjective fears about future applications or eventualities are insufficient to establish a continuing controversy. We also believe that the potential for the agency to repeat its actions in the future is too remote in this case to justify the application of an exception to mootness.

## II.

A court is without power to adjudicate disputes in the absence of a case or controversy. *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id*. (internal citation and quotation omitted).

Ayyoubi argues that an actual controversy remains, because the agency's approval of his application for permanent resident status is "ambiguous," and the agency could apply its disputed interpretation of 8 C.F.R. § 103.2(b)(18) to future applications for immigration benefits. He contends that this court should apply to his case the exceptions to mootness for "voluntary cessation" of challenged conduct, *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000), and for claims that are "capable of repetition, yet evading review." *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (internal quotation omitted).

We conclude that the prospect of the future agency actions hypothesized by Ayyoubi is too remote to establish an ongoing case or controversy. After August 10, 2012, any qualifying alien formerly associated with a group deemed to be a "Tier III" terrorist organization may be eligible for a discretionary exemption from the statute that would otherwise preclude him or her from obtaining lawful permanent resident status. That the agency has in the past reopened Ayyoubi's *denied* application does not make it likely that the agency will in the future, despite the Secretary's action of August 10, 2012, proceed to (1) reopen Ayyoubi's *approved* application, (2) withhold adjudication on Ayyoubi's reopened application, and (3) refuse periodically to review the reopened application. Ayyoubi must allege perceptible harm to establish a case or controversy, not simply "imagine circumstances in which he could be affected" by agency action. *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975). The threat of government action here is "two steps removed from reality," *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 123 (1974), and insufficient to satisfy the requirements of Article III.

Although Ayyoubi suspects he will endure injury during the naturalization process and afterward, he has not even applied for the further benefits that he claims he will seek. His assertion that the agency will fail to comply with the regulations governing those processes is "too conjectural or hypothetical to present an actual controversy," *Hall v. Curl*, 566 F.2d 619, 621 (8th Cir. 1977) (per curiam), and the "voluntary cessation" exception to mootness does not allow a plaintiff "to rely on theories of Article III injury that would fail to establish standing in the first place." *Already, LLC*, 133 S. Ct. at 730. Even if the same acts of support that led the agency initially to deny Ayyoubi's application for permanent residency bear on any future application for naturalization, the agency will consider those acts in the course of processing a different kind of application that seeks a different benefit and presents different considerations.

We are satisfied that the conduct Ayyoubi challenged "cannot reasonably be expected to recur." *Id.* at 729. The agency's regulations have changed materially since Ayyoubi filed his suit. Pursuant to those changed regulations, the agency has adjudicated and approved Ayyoubi's application for lawful permanent resident status. Ayyoubi is now neither "on indefinite hold," as he alleged in his complaint, nor obliged to wait for an individualized exemption. He has received the relief that he sought, and he alleges no injury that supports a continuing case or controversy. The appeal is therefore moot.

The appeal is dismissed. The judgment of the district court is vacated, and the case is remanded with instructions to dismiss the complaint.

———————————————