# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2018

Lyle W. Cayce
Clerk

No. 17-30779

DARWIN YARLS, JR., LEROY SHAW, JR., and DOUGLAS BROWN, on
Behalf of Themselves and All Others Similarly Situated,

> Plaintiffs–Appellants,

v.

DERWYN BUNTON, in his official capacity as Chief District Defender for
Orleans Parish, Louisiana; JAMES T. DIXON, JR., in his official capacity as
Louisiana State Public Defender,

> Defendants–Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge

This is a constitutional challenge to Louisiana public defenders'
practice—now discontinued—of placing indigent, non-capital defendants on
waitlists for appointed counsel. Appellants allege this practice, the result of
chronic budgetary shortfalls, violates poor defendants' Sixth and Fourteenth
Amendments rights to a speedy trial and to assistance of counsel. They seek a
declaratory judgment that such waitlists are unconstitutional and injunctive
relief requiring Appellees—the Louisiana State Public Defender and the Chief
District Defender for Orleans Parish—"to provide competent counsel to

No. 17-30779

individuals on waiting lists." (Interestingly, Appellees neither resist federal jurisdiction nor oppose Appellants' requested relief.)

Appellants dub this "a constitutional crisis of unprecedented dimension." Certainly, the constitutional safeguards due indigent arrestees awaiting representation is a weighty matter. So too is another constitutional safeguard: the mootness doctrine derived from Article III's "case or controversy" requirement. And on mootness, all parties concede a fundamental point: The Louisiana Legislature's recent $5 million reallocation of indigent-defense funding has eliminated all waitlists for non-capital defendants. As the State Public Defender plainly puts it, "Current waitlists in the districts for non-capital defendants are non-existent."[1] Appellants discount the revenue boost as an insufficient stopgap given public defenders' caseloads. The legal upshot, though, is unmistakable: The controversial waitlists are no longer in controversy. And no waitlists = no live case or controversy = no jurisdiction.

We thus DISMISS this appeal as moot.

I

Louisiana funds representation for non-capital defendants through legislative appropriations at the state level, supplemented by traffic tickets and other local fines assessed by each defender district. During a 2015 funding shortage, the Orleans Public Defender (OPD) and about 30 other districts implemented Restriction of Services (ROS) protocols as a triage measure. The protocols resulted from a statewide audit that determined, "in light of current caseloads," OPD was unable to "provide constitutional, ethical representation to its clients" as required by the Rules of Professional Conduct. Because the

---

[1] The State Public Defender's brief adds, "None of the districts currently in restriction of services report a waitlist for appointment of counsel for non-capital defendants."

2

No. 17-30779

Rules are black letter law in Louisiana,[2] ROS protocols prescribed waitlists for non-capital defendants to keep attorney caseloads within reasonable limits.

This suit originated when Appellants—Darwin Yarls, Jr., Leroy Shaw, and Douglas Brown—requested appointed counsel after being arrested on non-capital felony charges in Orleans Parish. The state court appointed OPD to represent them. But OPD responded that, due to excessive caseloads and staff shortages, it could not accept Appellants as clients and instead placed them on a waitlist for appointed counsel. Appellants thus lacked representation for preliminary hearings to scrutinize the allegations against them, challenge probable cause determinations, or request lower bail. Appellants were ultimately detained without counsel for several months. Each has since been released.

Appellants filed a proposed class action under 42 U.S.C. § 1983, seeking to represent a class of Orleans Parish arrestees who had been waitlisted. Appellants first requested a declaratory judgment that the waitlists violated their Sixth Amendment right to counsel and their Fourteenth Amendment rights to equal protection and due process. They asserted that due to Chief District Defender Derwyn Bunton's and OPD's refusal to represent them, they faced "an unduly heightened risk of prolonged and unnecessary pretrial detention." Appellants later amended their complaint to seek injunctive relief too, specifically requesting that Appellees be ordered to develop a plan to provide appointed counsel for each waitlisted defendant and to submit various reports.

After several months of negotiation, the parties submitted a Joint Motion for Final Declaratory and Partial Injunctive Relief. The accompanying

---

[2] *See Walker v. DOT*, 817 So. 2d 57, 60 (La. 2002) ("[T]his court has determined that the ethical rules which regulate attorneys' law practices have been recognized as having the force and effect of substantive law.").

No. 17-30779

Proposed Order declared that OPD waitlists violated proposed class members' constitutional rights. The district court went another route. It dismissed the case, citing *Younger* abstention, justiciability, and federalism concerns.[3] Appellants then filed an unopposed Motion for Relief from Judgment. The district court denied the motion, and Appellants appealed.

Then in 2017, after this appeal was filed, the Louisiana Legislature amended the Public Defender Act to steer $5 million more to district defenders for non-capital indigent defense. Nobody disputes that this added revenue eliminated non-capital waitlists. Appellants remained unmoved, however, branding Louisiana's funding for indigent defense "inherently inadequate and unreliable," adding, "conditions in Orleans may soon deteriorate once again," necessitating future waitlists.

## II

We review a district court's Rule 12(b)(6) dismissal de novo and may affirm "on any grounds supported by the record, including a party's lack of standing."[4] Lack of standing means lack of jurisdiction. And lack of jurisdiction means lack of judicial power. The nub of today's "dispute" is undisputed: Louisiana no longer maintains waitlists for non-capital defendants. The case, thus moot, must be dismissed.

## A

Article III's case-or-controversy requirement imposes an "irreducible constitutional minimum of standing,"[5] which consists of three elements: (1) a plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest which is . . . concrete and particularized, and . . . actual or

---

[3] *See Younger v. Harris*, 401 U.S. 37 (1971) (generally barring federal courts, except in certain circumstances, from interfering with ongoing state criminal proceedings).

[4] *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006).

[5] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

imminent"; (2) there must be "a causal connection between the injury and the conduct complained of"; and (3) the injury must be likely to be redressed by a favorable decision.[6]

Importantly, having Article III standing at the *outset* of litigation is not enough. "There must be a case or controversy through all stages of a case"—not just when a suit comes *into* existence but *throughout* its existence.[7] "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"[8] "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'"[9]

Here, both sides acknowledge that the Louisiana Legislature's recent reallocation of indigent-defense funding has eliminated the practice of putting non-capital defendants on waitlists. The State Public Defender describes the current situation this way: "None of the districts currently in restriction of services report a waitlist for the appointment of counsel for non-capital defendants." Simply put, there remains no "live controversy" as to these Appellants, and any relief they seek now would be "meaningless."[10] The waitlists were controversial, but that controversy has concluded.

---

[6] *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (quoting *Lujan*, 504 U.S. at 560–61).

[7] *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013); *see also Alvarez v. Smith,* 558 U.S. 87, 92 (2009).

[8] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)).

[9] *Id.* at 91 (quoting *Alvarez,* 558 U.S. at 93).

[10] *See id*; *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) ("Because there remains no live controversy between the parties . . . the injunction they seek would be meaningless.").

No. 17-30779

And it might not even be a "controversy" at all: Federal courts generally refrain from granting relief without the "concrete adverseness which sharpens the presentation of issues upon which the court[s] so largely depend[] for illumination of difficult constitutional questions."[11] All parties agree that waitlists are unconstitutional. They all agree that waitlists for non-capital defendants no longer exist. They all agree that this case does not implicate abstention concerns, even though a state-government defendant would typically object on this basis. They even agree that they disagree: When the district court asked the parties whether they agreed too much for a truly adversarial proceeding, they—no surprise—agreed that "there was sufficient adversity." This deep-rooted agreement on the central issues of the case gives us further pause to address the merits. But because we hold that the dispute (such as it is) is moot, we need not address "concrete adverseness" today.

## B

Of course, a defendant cannot moot a case simply by ending its unlawful conduct once sued.[12] If this were allowed, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."[13] As we have noted, "Defendant-induced mootness is viewed with caution."[14] "[A]llegations by a defendant that its voluntary conduct has mooted the plaintiff's case require closer examination than allegations that 'happenstance' or official acts of third parties have mooted the case."[15] Essentially, the goal is

---

[11] *Baker v. Carr*, 369 U.S. 186, 204 (1962).

[12] *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

[13] *Already*, 568 U.S. at 91.

[14] *Fontenot*, 777 F.3d at 747.

[15] *Envt'l Conservation Org. v. City of Dallas*, 529 F.3d 519, 528 n.4 (5th Cir. 2008).

to determine whether the defendant's actions are "litigation posturing" or whether the controversy is actually extinguished.[16]

Here, neither side contends the case has ended, though both sides concede the waitlists have ended. But no matter whose actions are credited with mooting the case—Appellees for discontinuing the waitlists, or the Legislature for reallocating the funding—this case neither invokes the skepticism normally associated with "defendant-induced mootness" nor raises suspicions of "litigation posturing." This is in part because we "are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude."[17] Absent evidence to the contrary, we are to presume public-spiritedness, says the Supreme Court. Government officials "in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."[18] So, "[w]ithout evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."[19]

What's more, in this case the public defenders largely *agreed* that waitlists were unconstitutional, but argued that inadequate funding tied their hands. Indeed, Appellees joined Appellants in urging us to declare the waitlists unconstitutional. So, it is highly unlikely that the "formally announced change[] to official governmental policy"—eliminating non-capital defendant

---

[16] *See, e.g.*, *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 426 (5th Cir. 2013).

[17] *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd on other grounds sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011).

[18] *Id.*

[19] *Id.*

waitlists—is "mere litigation posturing."[20] We doubt Appellees will re-implement waitlists on their own initiative.

## C

While it is possible that some day, for some reason, waitlists could resume, Appellants' claims do not satisfy the "capable of repetition, yet evading review" exception to the mootness doctrine.[21] That exception applies only when "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."[22]

The second prong presents a problem for Appellants. The Supreme Court has "consistently refused to 'conclude that the case-or-controversy requirement is satisfied by' the possibility that a party 'will be prosecuted for violating valid criminal laws.'"[23] Instead, courts must "assume that [Appellants] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct."[24]

Here, there is no "reasonable expectation that the same complaining party will be subjected to the same action again."[25] Indeed, for that to happen, Appellants would need to violate the law again, be apprehended again, and be placed on a waitlist while in pretrial custody again. Because we must assume

---

[20] *Id.*

[21] *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (quoting *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016)).

[22] *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (cleaned up).

[23] *Sanchez-Gomez*, 138 S. Ct. at 1540–41 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)).

[24] *Id.* at 1541; *see, e.g., Spencer v. Kemna*, 523 U.S. 1, 15 (1998) (reasoning that a suit concerning a parole revocation order was moot following the appellant's release from custody because any continuing consequences were "contingent upon [the appellant] violating the law, getting caught, and being convicted").

[25] *Turner*, 564 U.S. at 439–440.

No. 17-30779

that Appellants will follow the law rather than flout it, we cannot deem their claims "capable of repetition."

\*     \*     \*

The funding plight afflicting public defenders is real.[26] But under Article III, courts may adjudicate only "actual and concrete disputes, the resolutions of which have direct consequences on the parties involved."[27] Anything we decide regarding Louisiana public defender practices would have zero consequences on the parties involved. No defender district subject to ROS protocols maintains a waitlist for appointed counsel for non-capital defendants. As the waitlists have disappeared, so too have Appellants' constitutional claims.

III

However this case is framed—a genuinely adversarial effort to enforce rights or a coordinated public-relations effort to force funding—Article III requires live cases and controversies. Our Constitution has something to say about indigent defendants languishing indefinitely in jail without representation, but that is not this case—at least not any more. Since this appeal was filed, Louisiana lawmakers have reallocated funding for appointed counsel sufficient to render the waitlists for non-capital defendants non-existent. That fiscal action moots this legal action.

As courts cannot *re*dress what they cannot *ad*dress, we DISMISS.

---

[26] The Louisiana State Public Defender contends that fiscal shortfalls persist, even if waitlists for non-capital defendants do not: "The chronic underfunding of indigent defense continues, and LPDB is unable to fund all aspects of indigent defense with the resources allocated by the Louisiana Legislature."

[27] *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013).